IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:24-CV-94-BM

| | |
|---|---|
| SELENA THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| FRANK BISIGNANO, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Selena Thomas ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). This matter is before the court on Plaintiff's brief [DE-15] ("Pl.'s Brief") seeking judgment in her favor, Defendant's responsive brief [DE-18] ("Def.'s Brief") in opposition, and Plaintiff's reply brief [DE-19] ("Pl.'s Reply"). The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The parties have consented to entry of final judgment by a United States magistrate judge under 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fourth Circuit. Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, the court allows Plaintiff's brief [DE-15], denies Defendant's brief [DE-18], and remands this case for further proceedings consistent with this order.

I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability, DIB, and SSI on

September 1, 2021, alleging disability beginning September 4, 2019. Transcript of Proceedings ("Tr.") 111, 276-89. Both claims were denied initially. Tr. 111-34. Plaintiff filed a request for reconsideration (Tr. 175-76), and was denied upon reconsideration on August 24, 2022 (Tr. 135-64). On September 22, 2022, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 185-86. A hearing before the ALJ was held on November 15, 2023, at which Plaintiff, represented by a non-attorney representative, and a vocational expert, Dr. Robert Brabham ("VE" or "Dr. Brabham"), appeared and testified. Tr. 41-88. On December 7, 2023, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 7-33.

On January 29, 2024, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 270-72. On May 20, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more

than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step ("step five"), the burden shifts to the ALJ to show that other work exists in the national economy

3

which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and §§ 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 27. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since September 4, 2019, the alleged onset date. Tr. 13.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: cervical and lumbar spine degenerative disc disease ; diabetes with peripheral neuropathy; bilateral carpal tunnel syndrome; coronary artery disease status-post non-ST elevated myocardial infarction; depression; anxiety; attention-deficit hyperactivity disorder; and obesity. Tr. 13. The ALJ also found Plaintiff had the following non-severe impairments: residuals status-post right foot plantar fasciotomy; degenerative joint disease of bilateral knees; peripheral vascular disease/varicose veins; asthma; hypertension; elevated cholesterol levels; vitamin-D deficiency; gastroesophageal reflux disease; anemia; herpes simplex virus; history of irritable bowel syndrome; polycystic ovarian syndrome; chronic idiopathic constipation; low vision; and history

4

of glaucoma.  Tr. 14.

However, at step three, the ALJ concluded these impairments, both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 14-17.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself.  Tr. 16.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work[1] with the following limitations:

> [Plaintiff] is able to perform frequent bilateral upper extremity handling and finger [sic].  She is able to occasionally stoop, kneel, crouch, crawl, and balance (as defined by DOT/SCO).  She is able to occasionally climb ramps/stairs, however, she cannot climb ladders, ropes, or scaffolds.  She is able to tolerate occasional exposure to hazards, such as unprotected heights and dangerous machinery.  She is able to tolerate frequent exposure to extremes of humidity and heat.  She is limited to simple, routine, and repetitive tasks, but is able to maintain concentration, persistence, and pace for periods for at least two-hours at a time, perform activities within a schedule, maintain regular attendance.  She is able to complete a normal workday and work week.  She is able to occasionally interact

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996).  "Occasionally" generally totals no more than about 2 hours of an 8-hour workday.  S.S.R. 96-9p, 1996 WL 374185, at *3.  "Sitting" generally totals about 6 hours of an 8-hour workday.  *Id*.  A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1.  *Id*.

5

with the general public and occasionally have close, "team-type" interactions with coworkers. She is able to tolerate frequent change in a routine work setting.

Tr. 17.

In making this assessment, the ALJ found Plaintiff's statements about her limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 18.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of her past relevant work as a housekeeping cleaner; laundry worker II; industrial cleaner; and cashier. Tr. 25-26. Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. Tr. 26-27.

## V. DISCUSSION

Plaintiff contends that the ALJ failed to meet his step five burden of proving that there are a significant number of jobs which Plaintiff can perform in the national economy. Pl.'s Brief [DE-15] at 1.[2] Specifically, Plaintiff argues that "the record is void of any evidence to support that the . . . occupations [cited by the ALJ in his written decision] present a significant number of jobs in the national economy." *Id.* at 6. Plaintiff also argues that "[i]n recent years, it has become common practice for vocational experts to rely on the data provided by SkillTRAN (a.k.a. Job Browser Pro) software [("SkillTRAN software")] as the source of their job numbers." *Id.* at 8 (citing *Grigsby v. Kijakazi*, No. 2:21-CV-1553-TLW-MGB, 2022 WL 3088558, at *14 (D.S.C. July 14, 2022), *report and recommendation adopted sub nom. Grigbsy v. Kijakazi*, No. 2:21-CV-01553TLW, 2022 WL 3086494 (D.S.C. Aug. 2, 2022)). Plaintiff explains that the SkillTRAN software "lists job numbers

---

[2] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

from the Occupational Employment Survey (OES), which 'furnishes job estimates only by SOC codes' and which can then 'be adjusted for certain industries' and *estimated* for individual [Dictionary of Occupations Titles ("DOT")] codes." *Id.* (quoting *Ruenger v. Kijakazi*, 23 F.4th 760, 763 (7th Cir. 2022)). Plaintiff contends that an ALJ may not rely on VE testimony in support of step five findings where the VE "relies on the data for the broader grouping without making any adjustment." *Id.* at 9.

Here, Plaintiff alleges that the VE's "testimony reveals that [he] never actually testified that [the] numbers [cited by the VE at the administrative hearing before the ALJ] were specific to the occupations [he] indicated Plaintiff could perform." *Id.* (citing Tr. 26). Plaintiff claims that the VE "informed the ALJ that [his] job number estimates were *not* specific to any particular occupation, but were instead purportedly representative of a *group* of an undisclosed number of different occupations." *Id.* (citing Tr. 83).

As exhibits to her brief, Plaintiff attaches what appear to be three print-outs from the SkillTran website, which purport to show estimated employment numbers for various DOT numbers based on selected SOC Groups. [DE-15-1] (print-out for "inspector" DOT # 529.687-114); [DE-15-2] (print-out for "surgical-dressing maker" DOT # 689.685-130); (iii) [DE-15-3] (print-out for "remnant sorter" DOT # 789.687-146). Plaintiff cites these sources in support of her claim that "the SkillTRAN/JobBrowserPro software indicated" that (i) "the occupation of inspector, DOT #529.687-114, only represented a total of 78 jobs out of the 506,628 total for the 782 individual DOT occupations that make up the broader group"; (ii) "Surgical-Dressing Maker, DOT #689.685-130, represented just 65 jobs out of the 216,715 total for the 1,528 individual DOT occupations which make up the broader group"; and (iii) "DOT #789.687-146[,] . . . a Remnant

7

Sorter, represented just 98 jobs out of the combined 508,626 total for the 782 individual DOT occupations which make up the broader group." [DE-15] at 10. Plaintiff contends that jobs in these small numbers do "not constitute substantial evidence to support the ALJ's [step five] determination." Pl.'s Brief [DE-15] at 10-11.

The Commissioner counters that "a vocational expert's testimony regarding job numbers constitutes substantial evidence when no demand for the vocational expert's methodology or underlying data is made during the hearing." Def.'s Brief [DE-18] at 2. Specifically, the Commissioner argues that under *Biestek v. Berryhill*, 587 U.S. 97 (2019), "where, like here, a claimant does not request (*i.e.*, there was no demand for) any information regarding the vocational expert's foundational materials or methodology, the vocational expert is under no duty to provide it, and his testimony can satisfy the substantial evidence standard." *Id.* at 7 (first citing *Biestek v. Berryhill*, 587 U.S. 97, 102, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019)), (then citing *Sylvia M. v. Saul*, No. 3:19-cv-428, 2020 WL 5047066, at *6 (E.D. Va. Aug. 26, 2020).

The Commissioner notes that at the administrative hearing before the ALJ, Plaintiff stipulated to Dr. Brabham's expert qualifications (*id.* at 9 (citing Tr. 76-77)) and did not question Dr. Brabham's qualifications, methodology, or foundational materials either at the administrative hearing or during the Appeals Council review (*id.* citing [DE-18] at 9-10 (citing Tr. 85-87, 270-72)). Citing numerous cases from this circuit in support of his position, the Commissioner argues that Plaintiff has waived her argument by bringing it for the first time at the instant stage of proceedings. *Id.* [DE-18] at 10 (first citing *Coleman v. Colvin*, No. 0:14-cv-02697-RBH, 2015 WL 5474674, at *19 (D.S.C. Sept. 16, 2015)), (then citing *Jeffries v. Berryhill*, No. 1:18CV51, 2019 WL 1005501, at *4 (M.D.N.C. Mar. 1, 2019), *report and recommendation adopted*, No. 1:18CV51,

8

2019 WL 2468241 (M.D.N.C. Mar. 29, 2019)), (then citing *Bachand v. Colvin*, No. 1:15-cv-00686, 2016 WL 4074148, at *10 (M.D.N.C. July 29, 2016)), (then citing *Leisgang v. Kijakazi*, 72 F.4th 216, 219-20 (7th Cir. 2023)), (then citing *Howard v. Astrue*, 330 F. App'x 128, 130 (9th Cir. 2009)). (unpublished). The Commissioner also contends that "nothing from the administrative hearing undermined the numbers cited by Dr. Brabham" and "Dr. Brabham never testified that the occupations in question were representative of a broader group of jobs." *Id.* at 12.

In her reply, Plaintiff notes that the Supreme Court in *Biestek* "recognized that there must be some 'indicia of reliability' for the vocational expert's conclusions before the ALJ may properly rely on it to deny benefits." Pl.'s Reply [DE-19] at 2 (quoting *Biestek*, 139 S. Ct. at 1157). Plaintiff claims that the VE's "testimony in this case is plagued by indicia of unreliability." First, Plaintiff argues that the VE "could not definitively say that there was any work Plaintiff could perform in the national economy, instead testifying only 'I think so.'" *Id.* at 2 (citing Tr. 80). Next, Plaintiff argues that "the [VE] had to be informed by the ALJ that, in fact, at least one of the recited occupations appeared to include social demands which exceeded the provided functional limitations." *Id.* (citing Tr. 80). Plaintiff provides that the VE's next attempt to offer the occupation of "addresser, an occupation which the Commissioner has recognized as obsolete because it no longer exists in the national economy." *Id.* at 2. Plaintiff then questions the VE's reliability in light of his testimony regarding the occupation of sorter, where the VE stated, "again said 'I think' [such an occupation] might be a 'possibility' for a person with the assessed functional limitations." *Id.* Plaintiff claims that "while [the Commissioner] complains that 'Plaintiff did not ask any questions of the [VE] that cast doubt on the reliability of his testimony' . . . Plaintiff had no reason to where the testimony was already so plainly plagued by indicia of unreliability." *Id.*

9

Turning to the ALJ's written decision at step five of the sequential evaluation process, the ALJ specifically provided:

> To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that the claimant could perform the following: (1) a production inspector [(DOT]#529.687-114), light as generally performed, unskilled at Specific Vocational Preparation level ("SVP") of 2, with 200,000 jobs in the national economy); (2) machine tender (DOT#689.685-130), light as generally performed, unskilled at SVP 2, with 100,000 jobs in the national economy; and [(3)]sorter (DOT#789.687-146), light, unskilled SVP 2 with 150,000 jobs in the national economy.

Tr. 26.

As the precise wording of the VE's testimony forms the basis for certain of Plaintiff's arguments, the court notes the following relevant excerpts from the administrative hearing before the ALJ.

> [ALJ:] . . . Well, is there any unskilled work, given [the RFC limitations provided by the ALJ for Plaintiff]?
>
> [VE:] Yes, Your Honor, I think so. There are, for example, if we look at it and some of the things were production inspector of candies and food products. These individuals are simply looking at something passing down the line and there's a bad tomato or whatever. So, they would not violate the frequent use of the hands. There are approximately 200,000 of these light unskilled production jobs that would meet your requirements. DOT code here would include 529.687-114. Your hypothetical would also allow us to consider some of the very simple machine tenders. These individuals simply are observing machines. Things are falling off the line or something, someone else takes care of that, but there are approximately 100,000 machine tender jobs that would meet these requirements. DOT code here would include 689.685-130 and as I said there are about 100,000 of those that are light and unskilled . . .[3]
>
> . . .

---

[3] The VE also proffered the job of ticket collector, but the ALJ did not credit this job out of an "abundance of caution." Tr. 80-81.

> [VE:] Also, the other possibility, large assembly jobs would be called sorters, S-O-R-T, sorters. They sort things out. There're 150,000 of those and then they would not be more than the frequent use of the hands, I think. DOT code here would include 789.687-146. This is about 150,000 of those and these individuals would sort of sort things out and put them in stacks and packs and they would fall within this hypothetical as well.

Tr. 80, 82.

The ALJ next posed a second hypothetical to the VE, limiting the worker to the sedentary exertion level except that the worker can only use their upper extremities to handle and finger occasionally. Tr. 82. The ALJ then engaged in the following colloquy with the VE:

> [ALJ:] . . . First of all, the worker is limited to the sedentary exertion level, as defined by the regulations and the handling and fingering is reduced to occasional with the bilateral upper extremities. Are there any sedentary unskilled jobs where a worker can on use their upper extremities to handle and finger occasionally or does that preclude all work?
>
> [VE:] Your Honor, unfortunately when we move to sedentary jobs, we basically eliminate all the other body parts. You're not walking or whatever. We're using our hands and there are just not going to be a significant numbers of sedentary jobs that would fall in that category. There are a couple of possibilities that would meet but not significant numbers. The largest numbers would be getting back to those machine tenders again, but that is the main -- I could give you two groups of jobs but the –
>
> [ALJ:] Well, okay –
>
> [VE:] -- generally speaking, Your Honor, sedentary work, any restrictions to the upper extremities pretty much eliminates sedentary work and that's a DOT --
>
> [ALJ:] That's consistent with some of our regulations that it would be work preclusive and that's fine. I just wanted to get it from the expert. . . .

Tr. 82-83.

**A.     Specificity of VE's job numbers**

Plaintiff argues that "the vocational expert's testimony reveals that [he] never actually

11

testified that those numbers were specific to the occupations [he] indicated Plaintiff could perform." Pl.'s Brief [DE-15] at 9. The Commissioner contends that "the [VE] identified three, representative occupations that Plaintiff could perform: a production inspector (DOT code 529.687-114), [with] approximately 200,000 jobs nationally; a machine tender (DOT code 689.685-130), [with] approximately 100,000 jobs nationally; and a sorter (DOT code 789.687-146), [with] approximately 150,000 jobs nationally." Def.'s Brief [DE-18] at 8.

Plaintiff claims that the VE advised the ALJ that "[his] job number estimates were *not* specific to any particular occupation, but were instead purportedly representative of a *group* of an undisclosed number of different occupations." Pl.'s Brief [DE-15] at 1 (citing Tr. 83). While the court does not agree that the VE definitively made such a representation, the court finds that certain unresolved ambiguities in the VE's testimony prevent this court from determining whether the VE's testimony provides substantial evidence in support of the ALJ's findings at step five.

As noted above, at the fifth step of the sequential evaluation process, the burden shifts to the ALJ to show that other work exists in the national economy, which the claimant can perform. *Thomas*, 916 F.3d at 313. This court has previously found that remand may be appropriate where a VE provides job numbers related to a larger group of DOT occupations, and "there is no adjustment method for the court to consider because the VE apparently made no attempt to reduce the total number of jobs in the broader Census categories to reflect the number of jobs in the specific DOT occupations she identified." *Bos. v. Colvin*, No. 4:14-CV-206-D, 2016 WL 721563, at *13 (E.D.N.C. Feb. 2, 2016), *report and recommendation adopted*, No. 4:14-CV-206-D, 2016 WL 738762 (E.D.N.C. Feb. 23, 2016); *see also Cunningham v. Berryhill*, No. 3:19-CV-00054-RJC, 2020 WL 400638, at *4 (W.D.N.C. Jan. 23, 2020) ("Thus, as when a VE relies on data from

12

the OEQ, the VE here should have reduced or otherwise reasonably adjusted the data to reflect the number of jobs for the specific DOT occupations the VE identified." (collecting cases).

The Commissioner is correct that the VE only expressly refers to "categor[ies]" and "groups" of jobs in response to a sedentary hypothetical, which was ultimately not included in the ALJ's final decision. *See* Def.'s Brief [DE-18] at 13 (citing Tr. 82-83). Nevertheless, certain facets of the VE's testimony appear to be inconsistent with testimony related to job numbers for specific DOT occupations. For the example, the VE repeatedly testified that the job numbers he identified "include" a specific DOT code. *See* Tr. 80 ("DOT code here would *include* 529.687-114" with respect to the inspector position, and "DOT code here would *include* 689.685-130" with respect to the machine tender position (emphasis added)); (Tr. 87) ("DOT code here would *include* 789.687-146" with respect to the sorter position (emphasis added)). The word "include" is defined as "to take in or comprise as a part of a whole or group." *See* include, Merriam-Webster, https://www.merriam-webster.com/dictionary/include (last visited September 29, 2025). It is unclear why the VE would testify that jobs "include" a DOT code, if the job numbers he provided related to one specific occupation.

The court's review is further frustrated by the fact that the VE provided jobs for the DOT number he cited that do not match the job titles in the DOT. For example, DOT # 689.685-130, which the VE provides for "machine tender" actually relates to the occupation of "Surgical-Dressing Maker" in the DOT. Confusingly, there are other DOT numbers that include the word "machine tender" in the DOT. *See* Dictionary of Occupational Titles (DOT # 409.685-010 "farm-machine tender"); (DOT # 650.685-010 "typesetting-machine tender"); (DOT # 930.66S-010 "long wall mining machine tender"). Similarly, DOT # 789.687-146, which the VE provides as

13

for "sorter" actually relates to the occupation of "Remnant Sorter" in the DOT. Yet there are other DOT numbers that include the word "sorter" in the DOT. *See* Dictionary of Occupational Titles (DOT # 788.687-106 "scrap sorter"; DOT # 789.687-034 "cloth stock sorter"; DOT # 922.687-018 "bobbin sorter"; DOT # 922.687-086 "returned goods sorter").

With respect to Commissioner's argument that Plaintiff waived her objections to the VE's testimony by not bringing them earlier, the court is unpersuaded given the facts of this particular case. The ALJ has an affirmative obligation at step five to show that other work exists in the national economy, which Plaintiff could perform. *See Thomas*, 916 F.3d at 313. While "a vocational expert's testimony may count as substantial evidence," *see Biestek*, 587 U.S. at 105, 139 S. Ct. at 1155, it is unclear here whether the VE ever testified as to the specific numbers of existing jobs for the DOT numbers that he provided. The ambiguous and convoluted nature of the VE's testimony frustrates the court's consideration whether substantial evidence exists to support the ALJ's findings at step five. To be clear, the court makes no finding whether the VE was in fact attempting to provide job numbers related to larger groups of DOT occupations. Rather, the inconsistencies identified prevent the court from determining whether the ALJs findings at step five were supported by substantial evidence. It is not the reviewing court's role to reconcile inconsistencies. While it is ultimately up to the ALJ to weigh the evidence of record, the ALJ must properly consider all pertinent evidence before her, make findings and provide sufficient explanation in order to permit meaningful judicial review for substantial evidence, if necessary.

On remand, the ALJ should clarify the VE's testimony regarding whether the job numbers he provided relate to one specific DOT occupation or a larger group, containing multiple DOT occupations.

14

B.  **SkillTRAN software**

Plaintiff's remaining argument rests on information derived from SkillTRAN software. The court acknowledges that the VE never testified that he derived his job figures from the SkillTRAN software. *See* Tr. 77-88.

In light of the above remand for the ALJ to clarify whether the job numbers provided by the VE relate to one specific DOT occupation or a larger group, containing multiple DOT occupations, the court does not reach Plaintiff's argument here. The ALJ's findings on remand may be substantially different. On remand, the Commissioner should consider Plaintiff's argument here (Pl.'s Brief. [DE-15] at 8-11) and should ensure that any findings are supported by substantial evidence. It is, of course, up to the Commissioner to determine what weight to give all evidence. On remand, the Commissioner should make findings and provide sufficient explanation in order to permit meaningful judicial review for substantial evidence, if necessary.

## VI.  CONCLUSION

For the reasons stated above, the court allows Plaintiff's brief [DE-15], denies Defendant's brief [DE-18], and remands this case for further proceedings consistent with this order.

SO ORDERED, this 29th day of September, 2025.

_____
Brian S. Meyers
United States Magistrate Judge